Doris **EDWARDS** et al., Plaintiffs-Appellants,

v.

**GREENVILLE MUNICIPAL SEPARATE SCHOOL DISTRICT** et al., Defendants-Appellees.

No. 29802.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1970.

John C. Brittain, Jr., James A. Lewis, Oxford, Miss., for appellants.

Edward J. Bogen, Greenville, Miss., for appellees.

Before THORNBERRY, COLEMAN, and CLARK, Circuit Judges.

COLEMAN, Circuit Judge:

The Greenville Municipal School District of Greenville, Mississippi, the third largest school system in the State, composed of territory both within and without the corporate limits of the municipality, appears in this Court for the first time in a school desegregation case, in the status of appellee.

The figures from the various sources are not in exact harmony, but it appears that the system includes about 5,300 white students and about 6,800 Negro students grades 1 through 12. The annual budget is $5,369,238, and the school tax levy is at the limit allowed by law.

Greenville began the desegregation of its public school system in 1965. Freedom of choice did not dismantle the formerly de jure dual system in the manner now required. This suit was filed January 19, 1970. A biracial committee was formed to serve in an advisory capacity with the School Board in an effort to devise and present a plan which would meet the requirements of the law and enjoy the approval of both races, white and Negro. For a time the committee functioned exceedingly well. Ultimately, however, there was a polarization which led to a halt in communications.

## HIGH SCHOOL

The District Court approved a plan which would require all students of all races in grades 11 and 12 to attend the same high school. The student body so established will be composed of 637 white students and 625 Negro students.

All students of all races in the tenth grade are required to attend the Weston Attendance Center, with the anticipated result that this school will be attended by 439 white students and 436 Negro students. The trial court noted that there was some objection among educators to the separation of one grade from all other grades but felt that the disestablishment of the dual system outweighed such objections, particularly since these tenth grade students would later attend the eleventh and twelfth grades together at the same totally desegregated senior high school.

The Judgment of the District Court as to the high school grades, tenth, eleventh, and twelfth is hereby affirmed.

## JUNIOR HIGH SCHOOLS

The plan approved for the junior high schools, grades 7, 8, and 9, would result in the following racial distributions of students:

| School | Negro | White |
|--------|-------|-------|
| Bass | 732 | 98 |
| Coleman | 639 | 753 |
| Solomon | 392 | 509 |

As an alternative to the foregoing plan for grades 7, 8, and 9, the plaintiffs proposed that there be four junior high

schools, with the following results anticipated:

| School | Negro | White |
|--------|-------|-------|
| Bass | 638 | 238 |
| Solomon | 311 | 681 |
| Weston | 546 | 251 |
| Weddington | 298 | 219 |

This plan, requiring an additional attendance center, would increase white student attendance at Bass by 140 but would widen the racial gap at Solomon by 253.

The District Court found that the cost of converting Weddington from an elementary attendance center to a junior high school center would be about $300,-000. The school district does not have this money and cannot get it except by a bond issue first submitted to popular vote. The bond issue could not in any event be accomplished by the beginning of the next school year. It would encounter the argument that $300,000 is too much to spend merely to increase white attendance at Bass by the small number of 140.

In this posture of affairs, we cannot say that the District Court made the less desirable choice of plans. As this Court did in Hightower v. West, 5 Cir. 1970, 430 F.2d 552, we defer to the "judgment exercised by the district court." In *Hightower* the circumstances dictated the approval of a plan which left the school district with two all-black schools and several all-white schools.

In order that the School Board, in the short time remaining, may get about making the necessary physical preparations for the opening and operation of grades 7 through 12 on the newly restructured basis for the ensuing school year, the Judgment of the District Court approving the plans for the Junior High Schools, Grades 7 through 9, is *also* affirmed.

## THE ELEMENTARY SCHOOLS GRADES 1 THROUGH 6

The main thrust of this appeal is directed against the plan approved for the desegregation of Grades 1 through 6.

The plan is based on geographic attendance zones, with each child, regardless of race, required to attend the school situated in the zone where he resides. There would be no all-black or all-white student bodies. As a result of residential patterns, however, most of the schools would have a student body either quiet predominantly white or predominantly black.

From the inadequate maps included in the appellate record we are unable to determine whether the geographic zoning proposed in the elementary school plan is such "strict proximity" zoning as approved in Ellis v. Board of Public Instruction of Orange County, 5 Cir., 1970, 423 F.2d 203. Because the exact distances between elementary schools are not shown we are unable to evaluate the arguments as to the proposed pairing of some of the schools, rejected by the District Court as educationally unreasonable.

Therefore, pursuant to 28 U.S.C.A., Section 2106, the District Court, acting with all appropriately possible speed, is requested to take the following steps:

(1) Order the parties and counsel of record to confer and prepare, or cause to be prepared, in completely legible form, in triplicate, a suitable map of the district, graphically presenting the following information:

    (a) The geographic attendance zones proposed for the elementary schools, grades 1 through 6.

    (b) The name and location of each school within the respective zones and the interzonal distance between schools;

    (c) The projected pupil enrollment, by race, for each school.

(2) In preparing the above information and material, counsel are to confer, cooperate, and agree, where possible, and should any area of disagreement exist, it shall be specifically and clearly identified.

(3) Upon receipt of the maps as above ordered, the District Court will con-

duct a hearing and make findings as to objections, exceptions, and modifications, if any, to the map and the information thereon noted.

Additionally, the District Court may hear any proposed modifications, if such should be submitted, required to comply with the proximity principles of *Orange County*, supra, and shall make findings of fact as to the educational wisdom or inexorable necessity for any variations therefrom.

Moreover, the District Court will reconsider and enter appropriate findings as to any pairings of schools which may be proposed subsequently to the receipt of the map hereinabove ordered.

The Court is aware that before it became ineffective the 22 man advisory committee, evenly divided numerically as to race, voted 16 to 1 in favor of the principle of geographical zoning for small children and also voted 16 to 1 against pairing schools for children in this age group. We also note that Greenville has developed no record of stubborn resistance to requirements that it operate a unitary school system. We have, therefore, refrained from imposing inelastic deadlines because we are certain that the District Court, and the parties, are keenly aware of the necessity for expedition, if school at the elementary level is to open on time.

We retain jurisdiction of the appeal as to the elementary schools, for action to follow upon receipt of the information hereinabove required.

As above indicated, the Judgment of the District Court is in part affirmed, and otherwise held for the receipt of further information and action hereon.[1]

So ordered.

1. We necessarily retain jurisdiction for further consideration of the junior high school plan if it should be warranted by our ultimate decision as to the elementary schools. The junior high school plan, will, however, be at once placed into effect and will not, in any event, be altered before the beginning of the second semester of the 1970–71 school year.